**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**



THOMAS M. HORAN
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE

February 16, 2024

**VIA CM/ECF**

Counsel to the Parties

    Re:    David Dunn, as Liquidating Trustee of the GCX Liquidating Trust v. William L. Barney, Janet K. Troxell, Andrew P. Goldie, Dermot C. Lucey, Kenneth Martin Stone, Roger Proeis, Rory O. Cole, Rodney H. Riley, Wilfred T.L. Kwan (In re GCX Limited, et al.), Adv. Pro. No. 21-50264 (TMH), Case No. 19-12031 (TMH)

    Before the Court are (i) the above-captioned defendants' (the "Defendants") motion to dismiss (the "Motion to Dismiss") [D.I. 61 and 62] the Third Amended Complaint (the "TAC") [D.I. 56] in this adversary proceeding, and (ii) Plaintiff's Cross-Motion for Entry of an Order Alternatively Authorizing a Limited Period of Jurisdictional Discovery and Granting Related Relief (the "Discovery Motion") [D.I. 72]. On June 6, 2023, I held oral argument regarding the Motion to Dismiss and the Discovery Motion. Because the Court lacks personal jurisdiction over the Defendants, the Motion to Dismiss is granted, without prejudice. The Discovery Motion is granted, in part.

**Background**

    Because I write primarily for the parties, my discussion of the factual background is brief.

    A.  The Defendants

    Two of the Defendants in this adversary proceeding are American citizens. The remainder are non-American nationals.

        i.    The American Citizen Defendants

    Plaintiff contends that Defendant William L. Barney ("Barney") was GCX's Chief Executive Officer from January 2014 through April 2, 2020. TAC, ¶ 21. Plaintiff alleges that

Counsel to the Parties
February 16, 2024
Page 2

Barney is an American citizen with a permanent residence in Aberdeen, Maryland, although presently residing in Hong Kong, China. Id. Barney submitted a declaration stating that he has been a resident of Hong Kong since 1997 and has no present intention to move back to the United States. Declaration of William L. Barney in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, ¶ 2 [D.I. 64].

Plaintiff contends that Janet K. Troxell ("Troxell") was a Director of RGL from May 29, 2015, and was also the sole Director and President of Reliance France. TAC, ¶ 23. Plaintiff alleges that Troxell is an American citizen, and a resident of Texas. Id. Like Barney, Troxell submitted a declaration stating that she is not a resident of the United States. Instead, Troxell declares that she has resided in Solalá, Guatemala since February 28, 2021, and has no present intention to move back to the United States. Declaration of Janet K. Troxell in Support of Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, (the "Troxell Dec.", ¶ 2 [D.I. 63].

      ii.      The Undisputed Foreign Defendants

Rory O. Cole ("Cole") was GCX's Chief Financial Officer, and Chief Financial Officer of Reliance Globalcom Limited ("RGL"), each from January 2014 through December 2019. TAC, ¶ 22. On August 31, 2020, Cole's employment by GCX ceased. Id. Plaintiff alleges that Cole is a British citizen, currently residing in the United Kingdom. Id.

Rodney H. Riley ("Riley") was a Director of GCX and served as GCX's Senior Corporate Counsel since February 16, 2015. TAC, ¶ 24. Riley is a British citizen currently residing in the United Kingdom. Id.

Andrew P. Goldie ("Goldie") was GCX's Finance Director EMEA and originally employed by Globalcom (UK) Limited as its Finance Director EMEA. TAC, ¶ 25. Goldie was also a Director of Reliance Ireland, from January 9, 2015 through July 30, 2019. Id. During this time, Goldie served as a Director of RCOM INC. Id. Goldie is a British citizen currently residing in the United Kingdom. Id.

Dermot C. Lucey ("Lucey") was a Director of Reliance Ireland from October 2005 through November 2020. TAC, ¶ 26. Lucey is an Irish citizen currently residing in Ireland. Id.

Kenneth Martin Stone ("Stone") was employed by FLAG Telecom Asia Limited, a non-debtor subsidiary of RGL, as its General Counsel from December 11, 2018 to December 31, 2019, when Stone's employment ceased. TAC, ¶ 28. During that period, Stone also served as GCX's General Counsel. Id. Stone is a British citizen currently residing in Hong Kong, China. Id.

Roger Proeis ("Proeis") was GCX's Vice President of Global Marketing from March 2014 through January 2020. TAC, ¶ 29. Proeis is a British citizen currently residing in the Hong Kong, China. Id.

Counsel to the Parties
February 16, 2024
Page 3

      Wilfred T.L. Kwan ("Kwan") was employed by FLAG Telecom Asia, a non-debtor subsidiary of RGL, as its Chief Operating Officer since March 2014. TAC, ¶ 30. Kwan was also GCX's Chief Operating Officer from January 1, 2017 through June 30, 2020. Id. Kwan was also a Director of RGL from May 29, 2015. Id. Kwan is not a citizen of the United States and currently resides in Hong Kong, China. Id.

## The Complaint

      Plaintiff alleges that Troxell, Goldie, Riley, and Lucey each submitted to the general personal jurisdiction of this Court on the theory that they have established minimum contacts with the United States. Plaintiff reasons that they did so when they executed written consents authorizing (i) the filing of the bankruptcy petitions; (ii) the filing of the Original Plan that would have released each of the Defendants from liability; and (iii) the RSA.

      By the TAC, Plaintiff seeks to avoid (a) as fraudulent transfers certain KERP payments against Cole, Riley, Troxell, Proeis, Kwan, Stone, and Goldie (Counts I-II) and against Cole and Troxell (Counts III-IV); and (b) as unauthorized post-petition transfers certain KERP payments against Riley, Proeis, Kwan, Stone, Goldie, and Troxell (Count V). The TAC also alleges (a) breach of fiduciary duties under Bermuda law against Riley (Counts VI-VIII) and Barney (Count IX); (b) unlawful distributions and/or dividends under Bermuda law against Riley (Count X and XI); (c) unlawful distributions and/or dividends under Bermuda law against Barney (Count XII); (d) breach of fiduciary under Bermuda law relating to certain dividends against Riley and Cole (Counts XIII-XIV); (e) unlawful distributions and/or dividends under Bermuda relating to certain dividends against Cole and Riley (Count XV); (f) breach of fiduciary duty under French law relating to certain uncollected accounts receivable against Troxell (Count XVI); (g) breach of fiduciary duty under Irish law relating to certain uncollected accounts receivable against Goldie and Lucey (Count XVII); and (h) disallowance of certain indemnification claims against Riley, Cole, Troxell, Kwan, and Barney (Counts XVIII through XXII).

## Jurisdiction

      The Court has subject matter jurisdiction over this adversary proceeding. 28 U.S.C. § 1334(b). This action involves core and non-core claims. 28 U.S.C. § 157(b). The Defendants have consented to entry of an order by the Court on the Motion to Dismiss. The Plaintiff has consented to entry of an order by the Court on the Discovery Motion.

## Standard of Review

      Defendants move to dismiss the Complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, each of which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b). Because I am granting the Motion to Dismiss under Rule 12(b)(2), I am accordingly limiting my discussion to the applicability of Rule 12(b)(2).

Counsel to the Parties
February 16, 2024
Page 4

    A.    <u>Rule 12(b)(2)</u>

    Federal Rule of Civil Procedure 12(b)(2) permits the Court to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Determining personal jurisdiction involves a two-part analysis. First, the court applies the long-arm statute of the state in which it is located. <u>See</u> <u>Intel Corp. v. Broadcom Corp.</u>, 167 F. Supp. 2d 692, 700 (D. Del. 2001). The court then must ask whether exercising jurisdiction over the defendant in this state comports with the dictates of due process. <u>See</u> <u>id</u>. That requirement is met when the court detects sufficient "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 368–69 (3d Cir. 2002).

    In resolving a motion under Rule 12(b)(2), the court must accept as true the allegations in the complaint. <u>Altech Indus., Inc. v. Al Tech Specialty Steel Corp.</u>, 542 F. Supp. 53, 55 (D. Del. 1982). The plaintiff, however, bears the burden of alleging facts sufficient to make a prima facie showing of personal jurisdiction over the movant. <u>ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.</u>, 147 F. Supp. 2d 268, 270–71 (D. Del. 2001). To meet this burden, the plaintiff must offer facts which "establish with reasonable particularity" that jurisdiction exists. <u>Id</u>.

    The Court, however, is not limited to review of the pleadings when considering a motion under Rule 12(b)(2). <u>See</u> <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 142 fn. 1 (3d Cir. 1992). A defendant may submit an affidavit contradicting the jurisdictional allegations leveled against him. <u>See</u> <u>Capmark Fin. Grp. Inc. v. Lin (In re Capmark Fin. Grp. Inc.)</u>, 479 B.R. 330, 338 (Bankr. D. Del. 2012). Once a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. <u>See</u> <u>Carteret</u>, 954 F.2d at 146 (citing <u>Time Share Vacation v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 65 (3d Cir. 1984)).

    B.    <u>The Plaintiff Must Allege Adequate Facts to Establish that this Court Possesses Jurisdiction over the Defendants</u>

    There are two types of personal jurisdiction – general and specific. <u>See</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414–15 (1984). "When a court has general jurisdiction over a party, that means lawsuits arising from any transaction can be brought against the party in that state — regardless of whether the transaction itself had any ties to the forum." <u>Smith v. NMC Wollard, Inc.</u>, Civ. A. No. 19-5101, 2020 U.S. Dist. LEXIS 72324, *5 (E.D. Pa. April 24, 2020). Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State . . ." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011).

Counsel to the Parties
February 16, 2024
Page 5

    C. General Jurisdiction

When determining whether general jurisdiction exists over an individual, the court looks to where the individual has his or her domicile. Id. at 924; see also Bristol-Myers Squibb Co. v. Superior Court, 582 U.S. 255, 262 (2017) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . ." (citing Goodyear, 564 U. S. at 924).)

While an individual may have multiple homes, there is only one domicile. See Reich v. Lopez, 858 F.3d 55, 63 (2d Cir. 2017). The domicile is an individual's "true, fixed, and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006) (quoting Vlandis v. Kline, 412 U.S. 441, 454 (1973)).

    D. Specific Jurisdiction

Specific jurisdiction is "case specific." Goodyear, 564 U.S. at 927. It may be exercised where a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." Bristol-Myers, 582 U.S. at 262 (citations omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State[,]" giving rise to a "relationship among the defendant, the forum, and the litigation." Aldossari v. Ripp, 49 F.4th 236, 258 (3d Cir. 2022) (citing Walden v. Fiore, 571 U.S. 277, 283–84 (2014).

The Third Circuit has outlined a three-part inquiry to determine whether specific jurisdiction exists:

> First, the defendant must have "'purposefully directed' his activities" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. Helicopteros, 466 U.S. at 414. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

**Legal Analysis**

    A. This Court Lacks General Jurisdiction Over the Defendants

A person has only one domicile for general jurisdiction purposes. Reich, 858 F.3d at 63. Because each of the Undisputed Foreign Defendants is domiciled outside the United States, they are not subject to general jurisdiction.

Whether Barney and Troxell are subject to general jurisdiction is another story because the parties dispute where each is domiciled. Plaintiff alleges they are domiciled in Maryland and Texas, respectively. Barney and Troxell dispute this assertion, and each put forward evidence as to their domicile outside the United States. Therefore, the Plaintiff bears the burden of refuting that evidence by a preponderance. See Carteret, 954 F.2d at 146 (citing Time Share Vacation v. Atlantic Resorts, Ltd., 735 F.2d 61, 65 (3d Cir. 1984)).

An individual is a citizen of the state where he or she is domiciled, meaning the state where he or she is physically present and intends to remain. See Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011). Barney submitted an affidavit evidencing that his permanent residence is in Hong Kong and that he has "no present intention to move back to the United States." He attached to his affidavit his Hong Kong Permanent Card that was issued in March 1998.

Plaintiff relies on an Employment Agreement dated July 11, 2014 by and between GCX Limited and Barney (the "Employment Agreement"). In particular, Plaintiff points to the provision of the Employment Agreement that provides for "Home Leave" and business class tickets for Barney and his family via the most direct route to Aberdeen, Maryland. This provision of the Employment Agreement does not overcome the evidence put forward by Barney showing that he has been a permanent resident of Hong Kong for more than twenty-five years. As a result, Plaintiff has not offered evidence sufficient to controvert Barney's affidavit and supporting evidence. Barney is not subject to the general jurisdiction of this court.

Troxell's domicile is the subject of more substantive dispute. Plaintiff attached to the TAC numerous documents that Plaintiff alleges demonstrate that Troxell's domicile is in Austin, Texas. Such documents include (i) real estate records reflecting that Troxell owns real property in Austin that is "owner occupied;" (ii) motor vehicle records showing that on May 12, 2021, Troxell had an automobile registered at an address in Austin; (iii) a Texas Secretary of State record indicating that on May 18, 2021, Troxell was registered to vote in Austin; (iv) a Texas State Board of Public Accountancy record showing that on May 18, 2021, Troxell was an "Individual Licensee;" (v) a LinkedIn profile dated June 29, 2021 representing Troxell is located in Austin; (vi) a record showing that as of November 15, 2021 Troxell had a phone number connected to an Austin address; and (vii) credit reports from November 1, 2021 and December 22, 2021 stating that Troxell had a then-current address in Austin.

In her affidavit, Troxell represents that she has resided in Guatemala since February 28, 2021, and has "no present intention to move back to the United States." In response to the documents attached to the Complaint, Troxell maintains the Austin address on certain "accounts and profiles" because "the mail in Guatemala is unreliable." Troxell Dec., ¶ 6. She also declares that she simply has not updated her LinkedIn profile since moving to Guatemala. Id. at ¶ 7. Troxell also represents that she had a Voice over Internet Protocol phone number with an Austin area code, but had not used that number for approximately five or six years. Id. at ¶ 8. Troxell incorporated a declaration submitted on December 13, 2021 (the "December Dec.") and attached to the TAC as Exhibit A. In the December Dec., Troxell stated that while she owns property in

Austin, it is rented to a third-party and when she has visited Austin since February 28, 2021, she has not stayed at the Austin property. December Dec., ¶ 3.

I find Troxell's representations that she resides in Guatemala and has no present intention to move back to the United States credible. Furthermore, it is Plaintiff's burden to refute Troxell's evidence of her domicile outside the United States by a preponderance of the evidence, and Plaintiff has not come forth with any compelling evidence to the contrary. Accordingly, Plaintiff has not sustained his burden. Troxell is not subject to the general jurisdiction of this court.

B. This Court Lacks Specific Jurisdiction Over the Defendants

A Rule 12(b)(2) motion imposes on the plaintiff the burden of proving personal jurisdiction over the defendant. "Once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret, 954 F.3d at 146. When an evidentiary hearing is held to determine whether the court may exercise personal jurisdiction, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012); Carteret, 954 F.2d at 146.

Specific jurisdiction requires the Court to undertake a two-step analysis. First, the defendant must submit to statutory jurisdiction. Rule 7004(d) of the Federal Rules of Bankruptcy Procedure provides a nationwide service of process standard. Service under Rule 7004(d) "is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code." Fed. R. Bankr. P. 7004(f).

Second, the Court determines the limits of its jurisdiction under the Fifth Amendment of the United States Constitution. Due process requires that the defendant establish "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe., 326 U.S. at 317 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see also Hanson v. Denckla, 357 U.S. 235, 254 (1958) (finding specific jurisdiction when a defendant purposefully avails itself to the "privilege of conducting activities within the forum . . ."). Specific jurisdiction is found only when the contacts — the suit related conduct — "create a substantial connection with the forum state." Walden v. Fiore, 571 U.S. 277, 284 (2014). For specific jurisdiction to exist, the defendants conduct must be "'purposefully directed' . . . at a resident of the forum and the injury arises from or is related to" that conduct. GE v. Deutz AG, 270 F.3d 144, 152 (3d Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

The Court applies a "national contacts" standard to determine the minimum contacts a defendant has with the United States in general, as opposed to a Delaware-specific standard. See Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC), 405 B.R. 113, 122 (Bankr. D. Del. 2009); Klingher v. Salci (In re Tandycrafts, Inc.), 317 B.R. 287, 289 (Bankr. D. Del. 2004) ("So long as

Counsel to the Parties
February 16, 2024
Page 8

a defendant has minimum contacts with the United States, therefore, due process permits service on it.").

      i.    Plaintiff's Argument

Plaintiff asserts two bases of specific jurisdiction against Defendants. First, Plaintiff asserts that Troxell, Goldie, Lucey, and Riley established sufficient minimum contacts with the United States when they executed written consents authorizing (i) the filing of the Debtors' bankruptcy petitions (TAC, ¶¶ 218, 226, 238, and 245), (ii) the Debtors' filing of the Original Plan that would have released each Defendant from liability (Id., ¶¶ 166–68); and (iii) the Debtors to execute and perform the RSA (Id., ¶ 169). Plaintiff argues that Troxell, Goldie, Lucey, and Riley supervised the negotiations of the Original Plan that "virtually eliminated their personal liability." Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss Third Amended Complaint (the "Opposition") [D.I. 67] at 8.

Second, Plaintiff asserts that all Defendants received the two forms of benefits through the bankruptcy process. Plaintiff argues that Defendants received the benefit of limited recoveries by the Trustee to the proceeds of D&O policies—benefits that provided them of notice of a potential suit in the forum. See, e.g., TAC, ¶ 227; Opposition at 9. Plaintiff also argues that Defendants received the benefit of broad releases through the bankruptcy plan. By receiving both benefits, Plaintiff argues that Defendants established minimum contacts with the forum sufficient to exercise specific jurisdiction.

      ii.    Analysis

          a.    Defendants Troxell, Goldie, Lucey, and Riley are not subject to specific jurisdiction for their actions taken in authorizing and directing the bankruptcy process

First, Plaintiff asserts that by executing written consents authorizing the voluntary petitions for relief under Chapter 11, Defendants Goldie, Lucey, and Riley subjected themselves to the jurisdiction of the Court. TAC, ¶¶ 226, 238, 245. Notably, Plaintiff also alleges that Defendant Troxell "personally authorized the bankruptcy filings" after participating in board meetings occurring on September 12, 2019, and September 16, 2019, in which the restructuring of the Debtors was discussed. TAC, ¶¶ 217–18. Plaintiff maintains that Defendants authorized the bankruptcy filing and supervised the negotiations in their capacities as directors and officers.

While the Plaintiff asserts actions taken by the Defendants in their roles as directors and officers of GCX as a source of contacts with the forum, the Defendants are not automatically "insulate[d]" from having their official actions imputed to their persons, Calder v. Jones, 465 U.S. 783, 790 (1984); see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 782 n.13 (1984); Urquhart-Bradley v. Mobley, 964 F.3d 36, 46 (D.C. Cir. 2020) ("[W]hen evaluating under the Due Process Clause an individual's contacts with the forum state, courts cannot ignore contacts made by the individual just because they were made in his or her capacity as an employee or corporate officer. Contacts are contacts and must be counted."). The Court must assess the

actions of each defendant—in their official or individual capacity—to determine whether they maintain sufficient contacts with the forum. See Rush v. Savchuk, 444 U.S. 320, 332 (1980).

Plaintiff argues that Defendants, owing to their control over the bankruptcy process, established sufficient contacts for the Court to exercise either general or specific jurisdiction. In support of this assertion, Plaintiff cites several cases.

Plaintiff relies on In re Bozel S.A., 434 B.R. 86 (Bankr. S.D.N.Y. 2010), a case in which the court established general jurisdiction over an individual defendant with significant contacts to the forum. The defendant was listed as the "registered agent, director, or managing member of three corporate entities in Florida," listed his professional address in the state of Florida, verified in testimony that he was "in control of his Florida location," conducted several meetings in New York, and signed and filed on behalf of the debtor for the Chapter 11 proceedings in New York. However, that case was decided before the Supreme Court made clear that a defendant is only subject to general jurisdiction where that defendant is "at home." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014).

But Plaintiff also relies on Bozel, among other cases, to establish specific jurisdiction through the authorization of a voluntary petition for Chapter 11 proceedings. However, in Bozel, the Court found that the defendants had extensive business contacts in the United States and was otherwise active in the debtor's bankruptcy case, including by testifying at hearings. In re Bozel, 434 B.R. at 98–100. There are no similar allegations here. In In re Bernard L. Madoff Inv. Sec. LLC, the court established specific jurisdiction over defendants based on fraudulent transfer claims. The defendants' contacts—the transactions involved in their Madoff Investment accounts—related to the fraudulent transfer claims commenced in an adversary proceeding in the bankruptcy court. Picard v. Cohmad Sec. Corp. ETC (In re Bernard L. Madoff Inv. Sec. LLC), 418 B.R. 75, 80 (Bankr. S.D.N.Y 2009). In In re Deak & Co., the defendant had already submitted themselves as a party in interest to the bankruptcy proceedings; the court held that, by voluntarily "injecting" themselves into the proceedings, the defendant consented to jurisdiction in all proceedings involving their interests. In re Deak & Co., 63 B.R. 422, 432 (Bankr. S.D.N.Y. 1986).

Plaintiff's contentions rely on the Defendants' actions as officers and directors in authorizing the bankruptcy proceedings. To obtain specific jurisdiction, the Plaintiff's claims must "arise out of or relate" to the contacts established by the Defendants. Helicopteros Nacionales, 466 U.S. at 414. Defendants' actions do not rise out of or relate to any of the claims asserted by Plaintiff. Defendants authorized GCX to file a voluntary petition for bankruptcy. To that end, Defendants establish contacts related to the bankruptcy proceeding. Plaintiff asserts claims for breach of fiduciary duty and fraudulent transfers related to bonus payments provided to certain employees, both before and after the bankruptcy petition date. TAC, ¶ 15. But the Court recognizes the attenuation between authorizing a company to file for bankruptcy, and the transfer of bonus payments to certain employees. Defendants are not subject to personal jurisdiction for their actions taken in authorizing the voluntary chapter 11 proceedings.

       b. <u>The Court may not exercise jurisdiction over Defendants based upon the benefits they received from the bankruptcy plan</u>

  Second, Plaintiff asserts that the Defendants obtained benefits from the bankruptcy plan. The Plaintiff does not present, and the Court has not found, any cases wherein a non-debtor third party is subject to personal jurisdiction on the basis of obtaining a benefit from a bankruptcy plan.

  The unilateral action of one party "who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." <u>Hanson</u>, 357 U.S. at 253. Courts reject the argument that a beneficiary purposefully avails itself to the forum state solely for receiving a benefit. <u>See, e.g.</u>, <u>Budget Blinds, Inc. v. White</u>, 536 F.3d 244, 262 (3d Cir. 2008) (holding that the acceptance of payment from a bank in the forum state does not itself constitute purposeful availment to that forum state if the beneficiary did not initiate the transaction); <u>C & H Dev. Co. v. McIvor</u>, 1996 U.S. Dist. Lexis 12029 (N.D. Cal. Aug. 6, 1996) (holding that a beneficiary of a trust had not purposefully availed herself to the forum State); <u>Paccar Int'l v. Commercial Bank of Kuwait, S.A.K.</u>, 757 F.2d 1058, 1063-64 (9th Cir. 1985) (noting that the third-party beneficiary did not "purposefully avail[] itself of the privilege of conducting business in California by becoming the beneficiary of the letter of credit."); <u>Ark. Nursing Home Acquisition, LLC v. CFG Cmty. Bank</u>, 460 F.Supp.3d 621, 641 (D. Md. 2020) ("New Milestone did not purposefully avail itself to Maryland merely because it was the beneficiary of an agreement that (possibly) occurred in Maryland."). To the contrary, Due Process requires "some act by which the Defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . ." Defendants received the benefits of the bankruptcy plan without taking any action to avail themselves to the forum. The Court may not exercise personal jurisdiction over the Defendants based on the benefits received from the plan.

       c. <u>The business activities of Troxell, Barney, Kwan, and Cole are inadequate to establish personal jurisdiction</u>

  Plaintiff argues that Defendants Troxell, Barney, Kwan, Cole remain subject to jurisdiction by "conducting business on behalf of GCX, or its affiliates" and maintaining "supervisory responsibility over various Debtors and affiliated entities that were formed and did business in the United States." Opposition at 11; TAC ¶¶ 242, 248. Plaintiff argues that <u>Walden</u>, cited by the Defendants, does not apply to the case at hand because the "defendants in <u>Walden</u> did nothing to reach out to the forum state." Opposition at 9, 10.

  Without addressing Plaintiff's comparison of the present case to the facts in <u>Walden</u>, Plaintiff still fails to meet the requirements to establish personal jurisdiction. Plaintiff uses business conduct of the Defendants to establish contacts with the national forum. Yet Plaintiff fails to demonstrate how those contacts relate to the suit at hand. <u>Burger King</u>, 471 U.S. at 472. Conduct on behalf of GCX does not itself establish jurisdiction on a national level. Defendants Troxell, Barney, Kwan, and Cole are not subject to personal jurisdiction based on the business they conducted on behalf of GCX and its affiliates.

       d.  <u>Benefits Derived from the KERP Agreements Do Not Give Rise to Personal Jurisdiction</u>

  Plaintiff maintains that personal jurisdiction over Defendants exists because of the existence of the KERP Agreements. In bankruptcy court, a defendant need only establish contacts on a national level to have contacts with the forum. <u>Tandycrafts, Inc.</u>, 317 B.R. at 289. Plaintiff asserts that the Defendants entered into the KERP Agreements that "provided for retention bonuses in connection with the Debtors' U.S. bankruptcy filing." Opposition at 17. As such, the Plaintiff argues that a fraudulent transfer claim arising out of the bonus payments to Defendants constitutes the required relatedness of Defendants' contacts to the forum.

  Defendants assert that a fraudulent transfer claim—itself a statutory claim—cannot be related to the contractual contacts identified by the Plaintiffs. The KERP Agreements contains a clause providing for "'the non-exclusive jurisdiction of [a] New York or federal court sitting in New York County.'" Opposition at 17. Defendants accepted bonus payments based on the KERP Agreement to continue their work for the Debtor. However, the Defendants assert that, even if the KERP Agreements establish contacts with the forum, these contacts are not related to the fraudulent transfer actions—derived instead from statutory law.O

  The Court agrees with Defendants' analysis. Defendants undoubtedly established contacts with the forum when they entered into the KERP Agreements. However, due process requires "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). As such, the established contacts must relate to the current action. <u>Burger King</u>, 471 U.S. at 472.

  The KERP Agreements established a contractual duty between Defendants and the Debtors. Under those agreements, Defendants would reasonably anticipate a suit for breach of contract, likely in New York, the non-exclusive jurisdiction provided for in the Agreements. But Defendants could not anticipate the action at hand. Here, the Liquidating Trustee asserts a fraudulent transfer claim against Defendants in a forum unilaterally chosen by Debtors, a separate party. The Court recognizes a significant attenuation between the Defendants' contacts established through the KERP Agreements and the fraudulent transfer claims made by an unrelated party in a bankruptcy proceeding. Defendants signed the KERP Agreements presumably to acquire compensation for their continued work with GCX. These agreements merely established each Defendant's contractual duty to perform certain obligations to GCX in exchange for compensation. The Defendants could not reasonably anticipate that, by entering into the KERP Agreements, a Trustee would seek to enforce a statutory fraudulent transfer action against them. Accordingly, the Court maintains no jurisdiction over the Defendants on the bases of the KERP Agreements.[1]

---

[1] Alternatively, in any event, I would find that the KERP Bonus Payments sought to be avoided in Count V of the Complaint were approved under the Plan and would dismiss Count V on that basis.

    C.    <u>The Plaintiff is Granted Additional Time to Conduct Jurisdictional Discovery</u>

Although this Court is dismissing every count of the Complaint on personal jurisdiction grounds, it is appropriate to grant the Plaintiff time to engage in jurisdictional discovery. <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (quoting <u>Mass. School of Law at Andover, Inc. v. American Bar Ass'n</u>, 107 F.3d 1026, 1042 (3d Cir. 1997). Accordingly, the Discovery Motion is granted in part and the Plaintiff shall have sixty days from the date of this opinion and accompanying order to engage in discovery to determine whether the Defendants are subject to general or specific jurisdiction.

**<u>Conclusion</u>**

For the foregoing reasons, Court will grant the Motion to Dismiss, without prejudice. The Plaintiff is granted sixty days from the date of this opinion and accompanying order to engage in discovery to determine whether the Defendants are subject to general or specific jurisdiction.

_____
Thomas M. Horan
United States Bankruptcy Judge